Mr. Bookbinder, I see you're in here but your video's not on. I'm asking him to turn his video on. He may have stepped away. Let me call him on his cell phone. I'm going to mute myself real quick. I didn't click the button saying, you know, yes, I acknowledge it's being live streamed. My apologies to everybody. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States in this honorable court. Thank you very much. Welcome, everyone. So just a reminder of a few things. Even though we are virtual and Zooming and all of that, the rules all still apply. That nice big clock, that still applies. So please follow all of that. Please answer our questions. All of that still applies. The one addition is to recall that you cannot video or audio record this and that you should mute yourself when you are not the one speaking. But unmute yourself when you are. I know that's complicated, but that's the world we live in. So with that, we will proceed with the one case we're hearing today virtually. It's case number 22-60225, Midship Pipeline versus Federal Energy Regulatory Commission. And we'll begin with, is it Mr. Lowe? Yes, Your Honor. May it please the court, Robert Lowe for Midship Pipeline Company. This court properly stayed the commission's cost assessment order, finding that the order was likely an untenable administrative overreach. This court should now proceed to grant the petition for review and hold that the order was an exercise of power beyond those granted by Congress. As this court held in a naval Mississippi River transmission, in enacting the Natural Gas Act, Congress was careful to preserve traditional state powers. This court said Congress drew the Natural Gas Act meticulously with respect for state powers, not to handicap or to dilute them. And consistent with that, holding every court that has addressed the issue, and FERC itself, all agree that Congress left property damage issues to traditional state law remedies. American Energy, the Sixth Circuit said there's no power that FERC has over damages. D.C. consolidated gas, likewise, held the same. And tellingly, FERC in an earlier stage of this matter, in May of last year, expressly held that it has no authority under the Natural Gas Act on damage matters, even when they're related to certificate performance. At pages 66 and 67 of the joint appendix, the commission held that the Natural Gas Act does not authorize, and let me quote, does not authorize the commission to assess property damage and or direct payment of compensation for such damage. That is exactly— But, counsel, so nobody really disputes that. The question, I guess, is, is this fish or fowl? I mean, the part of the order that's being challenged, order the ALJ to go and determine the various costs and various options for remediation. I mean, that's not really ordering damages, is it? I mean, help me a little bit with how those two things are equivalent. Sure, Your Honor. First, that order from last year on page 66 to 67 is not limited to actually— it says the commission has no authority to assess property damages or to direct payment of compensation. So both things, it has no authority to assess the property damages or direct the payment, and said that those responsibilities are outside the authority granted by Congress. But it's not clear to me that that's what they're asking to do. What seems to strike me that under the basic powers granted by Congress, that the agency has some authority to inform itself with regard to its basic obligation under the certificate to enforce it. And the question is, what is a reasonable enforcement activity? And maybe one more comment. And then it seems to me that it's quite reasonable to ask that somebody calls that out because passing it out also defines what is to be done. And then the question of reasonableness factors in. It is not inevitable at all that this has anything to do with what private remedies that the landowner here has under Oklahoma law. I don't see how that steps on that at all. They come up with a number, but that number is for their usage in determining the reasonableness under the certificate of the action taken. So let me, I'm skipping past the threshold question here of whether this is right, but we'll come back to that. We have jurisdiction, but go ahead and answer. Yeah. I mean, that's the crucial central question I take about them. So they're citing their power to investigate as necessary and proper to see if there's been a violation of the orders or whether complying with the orders. But everyone agrees that therefore it needs to be what they're ordering has to be related to the question of whether we're complying with the order here, the certificate of compliance. And then your question suggests that the costs are somehow related to whether we're complying with the certificate. But the commission's only statutory role in this present context is a determination what restoration work remains to be done to fully comply with the certificate. And everyone agrees that work remains to be done. And then whether a midship has submitted a plan for finalizing and finishing the remaining work that FERC requested. It's a detailed plan going through what we're going to do. FERC's only role here is to review the work that remains to be done, to review our plan, and to determine whether our plan would satisfy the standards of the certificate. None of that turns on the cost of the work to be done. For example, the certificate could require there be topsoil. Sandy Creek is saying, well, you want to do X, but we think you should do Y. Why can't they look at the cost of that and say, well, Sandy Creek wants Y and it costs about the same, so we'll just order Y. That makes sense. Even though they don't have to do that, they can certainly look at what do the owners of the property think? What does, you know, what is the argument? What do you all argue midship about what you want to do? Does it make sense what they're arguing? Your restoration makes total sense. It would cost less. Their restoration costs a lot more. Can't they just look at that and kind of just the big picture of what they're doing? Respectfully, no, Your Honor. The issue is enforcing the certificate of claims, the order. So the order sets out what the standards are for what we need to do. So if it set out that we needed to put in this amount of topsoil or this grade of topsoil or this level or type of vegetation. You've done that repeatedly, repeatedly, repeatedly. And even gone before the Congress. And you've got a whole string of situations where you say you did it and then you represent you did it. And then you integrate it. Oh, well, we'll go back and do some more. But that's a real powerful history here that you're skipping past. And that, to me, it seems to me that someone has got to figure out what's caused. Let me give you a quick hypothetical. I've got a large ranch. And I've got a decorative fence that's been there for my grandparents. And it's a very valuable fence all the way around my place. And the pipeline comes in and they tear up a bunch of my fence. But it's only one part of it. And so they say, well, we'll try to. And so I say, no, well, I want you to replace the entire fence. Because I want, the landlord says, I'm entitled to have the aesthetic beauty of my original fence. And there's a fence to the fence. Now, the cost of that, of the old fence and the new fence, is very high. A large difference. It seems to me that in discharging the obligation of the certificate to restoration, what's reasonable, that that costing information is very important. There are all kinds of variations there. Your Honor, I mean, there's two stages to this. First, when they're deciding to grant the certificate, they put in particular terms. And we can challenge those if we want to at that stage. And second, regarding a particular property, for us to get into that property and to put in the pipeline, either we need to- But it's after the certificate stage that they, it's granted that the pipeline company coming in does the damage. Right. So the certificate then gives us the license to go to the landowner and say, we're going to perform this work, let's work out a deal. Or we go to the state or federal court to have a taking, eminent domain proceeding, where they'll claim that us doing this work, performing it, is going to be taking their property and seek a certain level of just compensation. So perhaps your fence example, right, could be part of that just compensation process. Once you destroy that beautiful museum-quality fence, you know, there's just compensation required to pay for the entire fence. That's part of that. This is not an issue here. This is a question of certificate compliance regarding land restoration generally. The certificate sets out standards for removal of debris, for fixing the soil grade, for runoff, irrigation, et cetera. These are all things that are incorporated in great detail in the certificate. It's not, you know, rocket science. Okay, so let's back up to jurisdiction because the reality is, as we know, when you actually have a hearing on facts, a lot of stuff happens, you know, and we don't know what that outcome will be. So why do we have jurisdiction now to preclude something that might make sense when you're actually, you know, in the bucket going through it? Why do we have jurisdiction because we're still kind of in the middle? Now, once they determine whatever they determine, then, yes, we have jurisdiction. But why do we have jurisdiction now under energy transfer et al? This matter is ripe for review. The standard set out for the applicable judicial review statute is Section 717R, subsection B, which says the judicial review to determine whether a party is aggrieved by a commission's order. So it's not a question of finality. It's a question of whether the party is currently being aggrieved. Now, FERC cites cases like- Well, I mean, parties are aggrieved all day long when they're in trial courts. I used to be a state trial judge, and I had a lot of parties looking very aggrieved whenever I ruled on anything. I don't think that qualifies. So you don't even know, frankly, whether you would be aggrieved by what they said. But our complaint is not about what the outcome of that process will be. Our complaint is that the process itself is beyond the statutory authority of the commission. This is not a case like Total, where everyone conceded there was a legitimate hearing, a legitimate process, but they were concerned about what the outcome of that process would be, and it might be illegitimate. So there it was in the future, and it was speculative. Also, in Total, this court said there was no argument that the process itself was all forbearance. That is the entirety of our entire legal claim here, is that the statute does not authorize FERC to engage in cost assessment determinations. How is midship immediately harmed by this order? So, Your Honor, there's four points regarding harm. First, this court in Cochran v. SEC said that being subjected to an ultraviolet proceeding is itself sufficient injury to support a finding that a matter is ripe for review. That is to be sufficient. The order itself is going to trigger a lengthy and expensive process. We know that because the ALJ started that process before this court issued the state. It involved discovery, months of process. There's also other related harms here. It encroaches on the state court's power to determine damage claims. Know that, you know, FERC is not itself issuing damages, but at the end of the day, what the landowner wants is a federally issued certificate of what their damages are, so they can march to state court and ask that that amount be awarded. So it's not entirely awarding it, but it's a half step in the encroaching on the state traditional powers. But is a half step enough? I mean, so one thing I'm grappling with, I guess, is the practical effect may be that here comes a cost number that the ALJ develops and all that, and perhaps Sandy Creek will go right to state court and ask for that amount in damages. But we don't know any of that per Judge Haynes' point right now. It may be that what the ALJ determines is that the costs are advantageous for one option or the other, and it actually helps midship. So where's the harm? The cost determination is neither helpful or harmful to midship, and midship is going to perform the work one way or the other. It doesn't, you know, the commission needs to decide whether our plan, if performed, would satisfy the work. If not, it should point out what in addition needs to be done, and we just need to do the work. There's no issue. Let me ask you this. If we were to conclude that we lack jurisdiction, so we just dismissed that we didn't comment on anything else. Y'all go have this, the ALJ issues a number, and then Sandy Creek takes that to state court and argues that that's the right number. But in the meantime, you do appeal to us, and we find that that went beyond their authority, and we find it was improper. Would the state court find that admissible if we reversed and said it was not proper at that point? Would it be admissible in state court? I assume that it would take that into account, but there's nothing that's more final at that point. The question of whether there is a legitimate process here that they can even consider costs is never going to be more ripe than it is today. No, no. I'm just wondering whether the state court can or would admit an order of an ALJ that we reversed and found was ultra-violence. It's not clear what a state court would do with that. It's obviously that the land order wants this order in order to either put settlement pressure on it. Doesn't that matter to whether this actually harms you at this stage? I mean, whether it's right? Because, you know, I realize that we don't know exactly what any judge is ever going to rule on anything, but what is the law? I mean, can they admit something like that? Is that admissible? Has anybody even looked at that or thought about that? Because, again, I've been a state trial judge. I'm not going to run around admitting stuff that's been found to be ultra-virus and whatever. I mean, that just doesn't seem proper. It's not even clear under FERC's arguments that we would be allowed to appeal at the end of a cost determination. They would say, well, you need to perform. If you don't perform, you can be sanctioned by us, and then you can appeal that. They wouldn't treat that as an appealable order. So you're saying FERC doesn't think the ALJ ruling is appealable? The ALJ ruling regarding cost would be, you know, what is that doing? They're not requiring us to go to the store and pay a particular amount of money to do it. The only thing they can order us to do is to comply with the certificate, which is to perform the work that is specified in the certificate. The problem with that is that they surely are empowered under the grant of the Congress to make all the factual studies and data to inform its obligation under the certificate itself. And in their judgment, they would like to know what some of these cost factors are. That doesn't bind anybody to anything else. Contrary to your brief, which I could not follow, you were talking about the state court proceedings, and you drop in a footnote that, well, under Oklahoma law, which I assume would be the state court remedy, the only thing that can be recovered here is a difference between the diminished value of the state itself. But that sounds to me like a very powerful state court remedy. So if I was a landowner, frankly, and I'm not a stranger to juries, and a good Oklahoma jury, I might want to have them in the box rather than FERC. So I look at that, what you cited as being a limitation of the damages, it doesn't strike me as being a limitation at all, because what is the measure of a diminished value? I mean, ultimately, what a state court will award, and it should be providing remedies like a jury trial in state court, we get to be seen if they do seek a state remedy. But the only question before this court is whether this cost determination is actually related to assessing whether we're performing, and whether our plan to perform the compliance work under the certificate is proper. The cost is simply irrelevant to that. So I think your question all presupposes that, well, they'd like to know it. We're out of time, but Judge Hayden-Botham, if you have another question, go ahead. Let me come back to my colleague's other question. How are you injured by a number that they come up with that this is what we call an item? What you're talking about, costing, it's not just a pure number. You're talking about the cost of doing X, Y, Z, whatever the particular mechanical processes are, and those are cost out. So I'm having trouble understanding how that impact, how that is injurious to you. I would go back to the argument that FERC itself in May last year recognized that it has no authority to even assess the amount of damages. It's outside its authority. If that's right, and we agree that that's right, then they shouldn't be arguing to the contrary. Under this court's decision in Cochran v. SEC, this whole proceeding is ultra-virus, is not supported by statutory authority. Even if FERC would like to know it, their authority is limited to the authorities that Congress gave by statute. And under this court's decision, that being subjected to that ultra-virus proceeding by itself is sufficient injury. And the process itself is going to be long and lengthy with discovery. So our injury is not concerned about the outcome of the cost determination. If so, we would have waited until that cost determination. That would have made this case much more like the energy case or the process to see if we're aggrieved. Our aggrievement, our injury is being subjected to this process that has not been permitted by Congress. When Congress wants to provide cost. I'm sorry. I've let you go past the time. Thank you, Your Honor. A little long. So you've saved some time for rebuttal. We appreciate that. So next we will hear from FERC, Ms. Banta. Good morning, Carol Banta for the commission. First, we want to thank the court for holding this argument by zoom rather than at the July session. We really, we appreciate that. This case is not about an improper proceeding and it's not a structural challenge to the commission's process. To be clear, there is an ongoing administrative law judge proceeding going on right now, which is not challenged. Midship itself has submitted extensive technical expert testimony on groundwater, erosion control, drainage, their soil science. The, the commission asked the administrative law judge to sort through. The parties did not, the midship and Sandy Creek did not even agree on what steps need to be done. And the commission before deciding whether midship, whether midship steps would comply with its certificate of public convenience and necessity obligations, or whether Sandy Creek was right about any of it. The commission asked the administrative law judge who's an expert in sorting through competing expert testimony and fact finding to do a fact finding proceeding about what steps are required, what steps, and this would be a recommendation in the form of a report to the commission, but what the commission should say the required steps are. And then the commission would decide whether midship was in compliance with its certificate or violating it. So the, the administrative law judge right now is holding a proceeding. Both parties have actually a midship, Sandy Creek and commission trial staff have been submitting evidence in June and July. I believe the briefs are due in August and the administrative law judge will write a report in October that the commission will then consider whether to adopt those findings of fact, but the administrative law judge is taking in all of this expert testimony on what the steps are. What is stayed here and, and what's on appeal before this court is whether that administrative law judge could have also been considering the cost of each of those steps. And this is not a damages number. This is if one party thinks that you need to put this much top soil in and get it from here. And this other party believes a different method. It's so highly technical. It's hard for me to even give examples. There's a lot about ponding and erosion on the banks of the Sandy Creek. And I, I struggled to, to understand that the testimony myself when I was reading it, but they don't agree on the basic steps. And that was the key thing that the commission sent to the administrative law judge. Let's talk about the cost issue. I mean, if I have a practice getting married and the exact same item that I wanted to give is on sale at, at store a and overpriced at store B. So I go to store a and buy it and give it to the brand. Does that in any way detract from the wonderfulness of the gift? Okay. The fact that I spent less on it than I would have spent at store B. I mean, what difference does that make if it's exactly the same item? Well, and this is for the commission to be able to compare the items because they might not be exactly the same. They, they, you might get topsoil put, put back over, over the right of way, but it is, is it the right depth? Was it brought in the right way? Is it the right kind? Does that matter based on cost? Why it's just, you know, I think it's super important to fix the Sandy Creek lot, but I understand there's a disagreement on that. And so why can't the ALJ just determine you need to get topsoil from Italy because the topsoil from Spain does not work in Oklahoma. And if that was made, why would it matter that the topsoil from Italy is more expensive than top focus? I have no idea if any of that's true. I'm just, it's just a hypo. It might not matter if, if they, if it truly weren't similar, the cost might not matter, but if the outcomes are similar, the idea that the commission has no ability to even consider cost, we can imagine. Here's a hypothetical scenario that you have a pipeline and a landowner who don't agree on a certain way to remediate the property. And there are two ways to get to a similar outcome. One of them is enormously more expensive than the other, but the commission does not know that because it's prohibited to consider the cost at all. And it orders the pipeline to do the one. It turns out maybe the outcome is slightly better, but the cost is off the charts, but the commission doesn't know that. It is a certainty that. The problem here, it's not so much whether to ban or allow a threat, hearing about the cost, letting an expert say, well, that version is really, really expensive. It's that the ALJ is supposed to determine, supposed to actually decide that. It's supposed to determine the cost of each step or each method. Yes. But that is for the commission to look and say, you're not, you are or are not in violation of your certificate. Let the ALJ consider that as just one of many pieces of evidence, you know, experts get up and talk on forever. And one thing they say is, well, say what, you know, midships expert says, well, Sandy creeps idea is just like ours, except there's cost three times as much. I could absolutely say that. I can tell you right now, no question about that. The question is, can the ALJ be mandated to say, oh, I order that. This is what the cost is. Well, I would submit that the first is, is really what the commission did. And I'm looking at paragraph 13 and, and the ordering paragraph in the, in the hearing order, that what petitioners called the ALJ order at J one 79, one 80, where the commission says the most efficient way to sort everything out is to give this to administrative law judge. The commission said something similar about why it went to the administrative law judge in the rehearing order. In a paragraph 14 on J two 31, but coming back to what the commission said is number one in, in its directive to the administrative law judge, determine the method and scope of the work activities. And then secondarily, number two is the reasonable cost to complete such activities. And actually mandating an order on the cost, not just considering the cost is listening to a bunch of experts, give testimony and this and that, and here's my problem with this and my problem with that. And the Sandy Creek expert can say, well, then it should, people are only arguing that because it's so much cheaper, but it's a mess. I mean, all of this discussion of costs, I don't think anybody's saying that can't come into evidence. I think the question is, does the ALJ have to actually determine the cost to complete the activity? It decides is the right activity. Well, when it comes into, I'm not sure it is clear at this point, whether it is allowed to come into evidence, but what the commission wants is a report where the administrative law judge has sorted through competing stories and competing expert testimony and competing facts, sort through it and give us the commission, a report that has marshaled all those facts and sifted through and found what the administrative law judge believes to be the answers. The council, none of that really relates to cost. And per judge Haines's point, this order sets forth the ALJ's marching orders, which includes specifically determine what the cost of this is. And so I appreciate the logic that you're setting forth in terms of why this might be helpful. So here's the question. If this is so unremarkable, why does the dissenting commissioner, if I recall, call this an unprecedented order? Does FERC do this all the time? No, because frankly, it's so unremarkable. If this is just another aspect of fact gathering, why here, as opposed to dozens and dozens of cases, I guess, where it could be helpful before. I'm not aware of another case that has been sent to an ALJ to sort through. I mean, these cases just in the past have not been litigated to this extent before the commission. Has the FERC before ordered ALJ or, or other inquiry into costs of different remedial measures or options? In this context? I don't, I'm not aware of any. No, it is between a pipeline on the land. I'm sorry. It is an unprecedented order then, but not because we've done something similar and took it a step further. We haven't done this to my knowledge at all in terms of sending the, the litigants to an administrative law judge to consider expert testimony. I'm not, you just change. Why can't this just be changed to say you can consider expert testimony, including expert testimony about the cost, but the ALJ is not ordered to and will not stay once they decide, okay, you're going to go get top soil from Italy. They don't have to say, and that costs a million dollars. They just rule on it. Okay. They've heard evidence. I can tell you right now, if all the experts agreed on everything, I don't think we'd have a problem here. So the experts are going to disagree on the cost. They're going to disagree on what makes sense. They're going to be disagreeing on a lot of things. And I'm, I'm respectful of that. That's fine. So the ALJ can just say, get the top soil from Italy. Thank you very much. But under this order, if they follow this order, this JA 179, they have to say, and that costs a million dollars or whatever the number is. And that's the dispute that we're sitting here with. So why can't you all agree to just put on all the evidence you need to put on, but the ALJ just determines what is the method and scope remaining? I'm not sure the commission would have a problem with that. I think our understanding was that the commission. Why don't you guys resolve that at that level? Because as I said, experts are going to testify things like, well, Sandy Creek is only making that argument because I want a bunch of money. And Sandy Creek's experts going to say, well, Mitch is just trying to save money by not putting in the proper top soil. That kind of evidence I'm guessing. I mean, I don't know. I'm not going to pretend I've done a FERC hearing, but I, that kind of evidence seems to me to be likely, but that is separate. As I said, from the ALJ decided here is the reasonable cost of top soil. Well, and all the commission wants to know is, is what steps are reasonable. Well, and I think the answer to your question about why this, why if, if we have somehow misunderstood what the, what the petitioners are arguing, it's because of the rightness problem here. There has been no final commission order here. We sent it to an administrative law judge. We had a recurring order on that. The commission declined to stay the proceeding. And we ended up with an interlocutory appeal to this court. So the exact question of what the commission will do with this information at the end of the process is entirely unlitigated and entirely appropriate for litigation at a later stage. Number two is in order to the ALJ to state a dollar amount. Okay. And that is what I understand to be mid, what midship is so upset about. Okay. And obviously that can tell us on rebuttal if I misunderstood that, but that is what they are. They complained about, and that's because they don't want them to fill up that piece of paper and go to the Oklahoma state court and say, see, we get a million dollars. You know, that's what they're trying to avoid. Right. Well, they have also, they have also argued. They have also argued that the commission cannot consider the cost and that the commission is strictly limited to saying, here are the steps. Do them. My understanding is that they argue that the commission shouldn't even consider it. Can't consider it. But they, in their, in their brief, their argument is that the commission should only be looking at what steps are required, regardless of what they cost or the pipeline to do it. And the pipeline will do it, whatever it costs. Commissioner says that. And I think the commission itself has said it has no authority to assess costs or award damages. And I'll give you that. There's a difference between awarding damages and computing the cost, but it, but it can certainly be argued that this is ultra virus. And so their point is that once this is done, once this goes forward and the ALJ comes up with the express cost determination that the FERC has ordered it to do, then that bell can't be unrung as the state order said. In other words, that number's now out there and the FERC had no authority to require the ALJ to compute it. I mean, so how can they challenge it later at the end of the process? If, I mean, FERC may come out at some point, I guess, as I apprehend it and say, well, we're not going to consider what the ALJ did with regard to cost. We're just going to order option A instead of option B based on the ALJ's analysis. I'm not even sure midship can then challenge the cost determination or the exercise of what is arguably an ultra virus power. Well, the commission wants the cost information so it can determine what is reasonable to require. And, and what I started to say before is if we had a case where we were refused to even consider that, it's a certainty that we would end up in court with a pipeline arguing that the commission's requirements were unreasonable because the costs are outlandish and would be passed through to rate payers. And we would have no defense to such an argument if we, I guess, as our defense, if we were precluded from considering costs would be precluded from considering costs. If I may, let me ask you a follow up question. Statutorily, we are granted that as an appellate court, I guess we're sort of de facto sitting against the 10th circuit for this Oklahoma case, but we are the fifth. But we have the statutory authority to direct and the agency as to what uses they can make of this. And in other words, to tell them that, that, that you simply make it, there's nothing there, it relates to the client insofar as you may consider costs in making your decisions, of making your own decisions yourself in the process itself. In other words, you don't need a big number to throw out there. You have that cost to compare various things in discharge of your obligation to be reasonable. So the reasonableness of costs, everybody agrees, it's certainly a factor. In other words, we can cabin from here the ongoing processes. What do you think about that? I think that that's basically what the commission itself has said, because the commission has said, and this goes back to Judge Wilson's question, the second part of the question as well. Well, I can be based on that if it's acceptable, articulate exactly what the commission has said many times in these orders and in the order that Mr. Wilnot does not assess damages. And in addition, the midship pointed out in its reply brief on page 30, a number of factors that a court would take into account that the commission is not going to hear about comparative fault mitigation of damages. So I think any state trial court or a federal district court, if that's where, where the case work would look at costs, just raw cost numbers that the commission came up with. And I think it sells trial courts short to suggest that they would rubber stamp that as a damages figure. When the commission itself has said repeatedly, this is not a damages figure. We are not assessing damages. We can't assess damages. We don't intend to assess damages. But counsel, take away the label damages and say with this cost and the question, how do you, what use do you make of costs? And I think it's fair to say that you certainly are unable to, to, to consider cost in making your own decisions about what is necessary or not necessary, whatever else in the mix itself or particular items. In other words, back up the discharging your duty of reasonableness. You can consider the relative cost yourself, but you don't come up, they're not going to produce an N number of any kind. That information is there and for them to order what goes forward. They're going to make a decision that going forward, the agency will, that this is what needs to be done. And, and they go, you go forward with it. And the midship, what they've got is an order to do these jobs. And there's not enough, there's not an abstract number. So in other words, you utilize cost and you're inside making your decisions about what needs to be done. And then that, then you make the, you either the order, this is what got to be done. We're fine with that. It's just without, we wanted the ALJ to be able to sort through competing evidence to make a report. The expert, as you described it, is going through, trying to determine what needs, what needs to be done, not to be done. And what's reasonable. And, and making that decision, they can consider costs or whatever. Any person would, would reasonably want to know. In other words, if you, if it's A and B, you can accomplish the same thing. Reasonably, they ought to go with a cheaper cost. In other words. Okay. As you're describing, I think your time is up. Do you have a sentence you want to say? Oh, no. We, we just asked that the administrative law judge be able to produce a useful report for the commission to fulfill its own obligations. Okay. Thank you. Now, Mr. Binder, you have four minutes. Good morning. May it please the court. I represent Sandy Creek farms. Whose property is that the, the heart of this dispute. I think we can eliminate a large issue right now, which is quite simply assuming FERC issues, the appropriate order and midship actually complies and cleans up its mess. There's nothing for Sandy Creek farms to go to state court about. This is all about restoring Sandy Creek's property, assuming FERC issues, the right order and Sandy Creek complies. That's it. There is no further issue of restoration. We wouldn't be going to state court. But the argument that midship has made is that y'all don't really want them on your property anymore. You just want to be able to go recover the money and maybe repair it yourself or maybe just keep the money. That's their argument. No, well, we're not interested in keeping anyone's money. We're interested in repairing the property and what we've, we've. But they said you haven't let them on to get it done. Most recently after three, two years of them making the problem worse of hiring cut rate contractors, who've actually made the problem worse. We finally had enough of that. We were going to let them make it even worse on top of that. That's why it's a good idea for the ALJ to make the determination. If the ALJ says, Hey, you got to do this, this, this, this, and I want this, this, this, and this result. And midship complies. There's nothing to go to court about. We will let them on the property to do what FERC tells them to do. But how does cost even enter in? Cost is a, is a proxy for veracity in this thing. We have had years of midship, but to put it plain botching the job and. Per Judge Haynes' point earlier with council. Why can't the experts just hash that out? This, this mode of remediation is preferable to this mode of remediation because of X, Y, Z substantive factors. Why does cost even enter in? And I mean, the more to the point does FERC have the authority to expressly develop a cost assessment? Because as you break down each stage from here's the result to here's steps,   C, D and sub steps of each of those steps. There are, there are different methodologies to be used, different ways. The contractors will do each of those things. And it's important for the ALJ to say, hold it. You say this step is going to cost $8 million. Midship says it's going to cost 200,000. Okay. Let's figure out why there's such a huge cost disparity. It's, it is a proxy. Why can't that be done the way I said, just as evidence that's admitted or rejected to, and then decided,  we'll let it in, blah, blah, blah, but not an actual order that says, number one, blah, blah, blah. Number two, $1 million. That's the number two entry that has to say a dollar amount, as opposed to the number one entry that says you need to put in some top soil. And you need to repair this gate is not an issue. And that's going forward as, as apparently is the case. And no one's arguing. So why don't we need number two? As long as the ALJ is actually allowed to consider and make findings based on those costs. That's fine. We don't know that they should be making findings in expressly. That way. What I'm saying is if an expert says, the reason that the midship expert said, this is just because that's really cheap, but it's also sloppy. That's saying just flops away. And the next time that there's when, okay, that's the sort of thing experts say. And that this ALJ can certainly consider, but it isn't their ruling. Oh, you got to pay more than floppy sand. No, is if they have to explain their ruling, you're going to flip it over. What happens if it was the landowner coming in and the pipeline company saying, whoa, whoa, whoa, we, you know, the landowners saying don't consider costs and the pipeline company saying, yes, do consider the cost. That would be the normal situation. I think this back and forth of considering it is a separate question from ruling on it, which is, you know, there's an order that only has two orders, two things you have to do. And number two is assessing that number. So I think, I mean, to me, maybe I'm focusing on that too much, but that, you know, when I was a state trial court, if I was ordered by a higher court to do something, I wanted to do exactly what I was told to do. So. Let me go back, go back to your answer to her question. What you just said. I thought what you said earlier was as long as they simply consider costs and discharging their duty, you'll be the beneficiaries of that. And you don't. So that means that you don't have to come up and call stop with some big number. In doing their own evaluations of what up, what's reasonable and so forth. They can come up with an answer and that's it. Yes, your honor. That would be fine. We don't need a final. We don't need a separate section of the ALGS report saying I find that the cost of remediation is X or Y or Z. We don't need that. We need the ALG to be able to consider the costs and make decisions based on. It's a do X and do Y. If y'all were in new Orleans, I would tell y'all to walk out into the public area and just talk to each other about this. Cause it sounds like you all agree. We don't need this number. We just need the consideration of what's right. And what's wrong. Well, why are we here? Have you all talked about that? We've had extensive discussions with midship and midship has rejected our proposals as too expensive. Okay. I'm not talking about that. I'm not talking about settling whether you need topsoil or not. I'm talking about this issue. Have you all discussed that? ALJ can consider a lot of stuff, but ultimately simply rules. You need to put in topsoil from Italy. A hundred pounds of topsoil from Italy period. Yes. The reasonable cost of topsoil that needs to be put in, or the reasonable cost of the radiations is $1 million. Those are two separate orders in my opinion. And it seems like y'all all agree on the first one, not what it is, but how it, how it should look. Yes, Your Honor. You don't seem to need the second one. So why are we here? I'm sorry. I mean, I don't mean to be. I suggest you ask midships council. Why exactly? Well, because we've got the number two, but Ms. Vanta doesn't seem to think we need the number two, but that came from her. So that's why I'm just a little bit confused. And we do not believe that we need a separate, and this will therefore cost X million dollars. No. So long as the ALJ can consider costs in determining each step of what needs to be done, that would be fine. That would give the ALJ the information needed for the ALJ to do their job. Well, your time is up. Let's go back to Mr. Loeb and let me ask him that. Now, I'm not saying that you think cost matters. I understand you think it's irrelevant, but I guess I'm saying, if an expert witness talks about that as part of their overall evaluation of store A versus store B, why can't they do that? Provided that the ALJ is not ordered to say a million dollars is the right number. Thank you, Your Honor. Well, I think there seems to be some consensus that the order to determine costs here is, is erroneous. And then I was a question in the other part of the order of what the ALJ can do. And I respond to your question directly. If, if the ALJ in that process should look at whether, what has been proposed by midship would comply with the certificate requirements. So we'd say we're going to dig down six feet or 10 feet to look for rocks. We're going to put this type of topsoil. It's going to be grade A. As the certificate occurs, we're going to, you know, buy it from this supplier and they can argue that's whatever, for whatever reason is unreliable or unacceptable. I don't think price bears in it. It could be prior performance or whether when we say it's grade A really isn't grade A, they can make those kind of arguments. You know, the only reason they're asking for grade A is because that's really cheap. Grade B is what everybody else does that. And it's more expensive. And they just said that as opposed to the ALJ determining the right number, why is that not admissible? It's not an open-ended reasonableness determination. It's whether we're meeting the standards set out in the certificate of compliance and the guidance, which lays out all the standards we, you know, so it doesn't require grade A topsoil. We're using grade A topsoil. They can assess that without looking at the cost, but ultimately the ALJ is separately ordered to determine the, to determine the cost of not only the performance by midship, and this is performance. I understand that. But if you took out number two, would that necessarily mean that no one could ever mention anything at all about what the cost was of anything? If any experts said that, they should be thrown in prison because they are violating the law. Look, if they wanted to cross examine that we're not really using grade A topsoil because we're paying too little for it and therefore not credible, I guess you can theorize some way that those kinds of things might come in and cross examination. But I, here, you know, FERC not only ordered the ALJ to assess the cost of midship performance, but also to assess the cost of self-performance by Sandy Creek, that the landowner performed this work. Now FERC has no statutory power to assess costs and has no power to order us to allow Sandy Creek to do the work itself or to pay. You make that, you make that argument, but no, no one is proposing they do that. I mean, that's in your briefs drought, but that's a big jump from where we are. It's in the order. It's in the order requiring the ALJ. And I have to ask you, why is it in the order that FERC is ordering the ALJ not to determine just our performance? Because we submit a plan. You can see whether it's satisfactory, whether it'll meet all the standards, but they're also saying also assess the cost of, if Sandy Creek just performs it themselves, that is completely beyond the authority. Council, please. What you're hearing is something that to me is quite different. You're barely not willing to accept that, that they in making their own determinations of reasonableness, that they can consider cost. And then they tell you, we've determined it's reasonable to do A, and you do it. Because that's what you were arguing before. We just do what they say, period, but forget cost. Well, they have an obligation too, that has to be accommodated to reasonable. And they have a statutory ground of authority to consider all facts and data necessary to implement that. And all they're doing is doing common sense and looking at internally the cost. We have the power to confine that activity to it, but you're not willing to, I'm not asking you to agree to that, but it seems to me that that answer is every one of your arguments. If this court were to vacate part of the order saying that the ALJ is to determine the cost and to say that in assessing how much, whether our plan will work or not, and how much work is about to be done, it's not completely forbidden for it to consider cost. I think that would certainly be an improvement of where we are, but ultimately- They're afraid to consider cost, and they're experts at making decisions and discharges. They do need to consider internally the recommendations that they make. But let me just make the point, this is not an open-ended reasonableness determination. It's a, there's an order out there, and it's a question of whether we're in the process of complying with that order by restoring the land. Yeah, but that kind of detail, whether they mess that up, that is something you have to appeal after the fact, not before. And they have remedies for that. If we do not, at the end of the day, we say, look, we're going to do steps A, B, and C. And they say, yeah, if you do those things, they will satisfy the certificate. And if we fail to do it, they can issue an order to show cause. No one has found that we're out of compliance yet. They can issue an order to show cause why we shouldn't be penalized. They can penalize. They have other very severe arrows in their quiver to punish us, to make us comply. Well, Mr. Loeb, I just kind of feel like we're, we're being put in a trial court here, but anyway, I appreciate everybody's argument. It was great to hear from all of you. And I think Zoom worked fine for this, but we appreciate you all the cases under consideration now, and we are going to end the Zoom oral argument now. Thank you, Your Honor.